UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREA LEAVELLS,

    Plaintiff,

v.                                              Case No. 15-cv-10435

KONDAUR CAPITAL CORPORATION,

    Defendant.

_____/

**ORDER GRANTING MOTION TO DISMISS**

Pending before the court is a Motion to Dismiss, filed by Defendant Kondaur Capital Corporation ("Konduar") on May 4, 2015. (Dkt. # 20). Having reviewed the briefs, the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant the motion.

**I. BACKGROUND**

Plaintiff Andrea Leavells defaulted on her loan with Bank of America. After the default, non-party Bank of America sold the loan to Matawin Ventures Trust Series 2014-2 ("Matawin"). (Dkt. # 15-1, Pg. ID 196.) The sale was effective August 21, 2014. (*Id.* at 188.) Leavells received several communications in conjunction with the sale of the loan.

**A. September 10, 2014**

On September 10, 2014, Bank of America sent a letter to Leavells (the "Bank of America Letter"). (*Id.* at 196.) The letter, titled "Important Message About Your Home Loan," notified Leavells that, beginning October 1, 2014, servicing of her loan would be transferred to Kondaur. (*Id.*) The notice provides contact information for questions

regarding the transfer for both Bank of America and Kondaur. (*Id.* at 197.) The notice did not specify a loan balance or otherwise seek to compel payment from Leavells. In fact, the notice advised Leavells that "Bank of America, N.A. will stop accepting payments from [her on] September 30, 2014." (*Id.*)

### B. September 18, 2014

On September 18, 2014, Kondaur sent a letter to Leavells (the "September 18 letter"). (*Id.* at 188.) The letter was titled "Notification of Assignment, Sale or Transfer of Your Mortgage Loan." (*Id.*) The letter advised Leavells that "effective August 21, 2014, [her] mortgage loan was assigned, sold or transferred to Kondaur Capital Corporation, as Separate Trustee of Matawin Venture Trust Series 2014-2." (*Id.*) The transfer did "not affect any term or connection of the Mortgage, Deed of Trust or Note and th[e] notice require[d] no action on [Leavells's] part." (*Id.*) The letter also provided contact information for Konduar and advised that Leavells must "send [her] monthly payments directly to Kondaur Capital Corporation at the address on [her] mortgage statement." (*Id.*)

### C. September 30, 2014

On September 30, 2014, Kondaur sent a second letter to Leavells (the "September 30 letter"), this time notifying her of Kondaur's assumption of responsibility for servicing her loan (as distinct from the sale of the loan). (*Id.* at 192.) Unlike the September 18 letter, but consistent with the Bank of America Letter, the second letter advised her that "Bank of America, N.A. will stop accepting payments" and "Kondaur will start accepting payments" on October 1, 2014. (*Id.*) The letter also provided contact

2

information for both Bank of America and Kondaur.  (*Id.*)  The letter also stated that "[a]s of September 11, 2014 $88,446.21 is owed on the account."  (*Id.*)

The letter also contained a Fair Debt Collection Practices Act notification.  (*Id.* at 194.)  The notification stated that:

> Kondaur Capital Corporation must inform you that this communication is from a debt collector attempting to collect a debt and any information obtained will be used for that purpose.  If the Addressee of this communication is anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States, this communication is intended solely for informational purposes and does not constitute a demand for payment.

(*Id.*)  The letter further provided Leavells an opportunity to dispute the validity of the debt and informed her that "Kondaur Capital Corporation, as Separate Trustee of Matawin Venture Trust Series 2014-2 is the current creditor to whom the debt is now owed."  (*Id.* at 193.)

### D. December 23, 2014

On December 23, 2014, Kondaur sent a third letter to Leavells, entitled "Notice of Default and Intent to Accelerate and Foreclose" (the "December 23 letter").  (*Id.* at 199. The letter stated that:

> Your mortgage payments are past due, which puts you in default of your loan agreement.  The Promissory Note and/or Security Instrument, including all Riders thereto, are presently in default due to the non-payment of the payment and all those subsequent.  You have the right to cure this default, and we hereby notify you that, unless you bring your account current on or before January 22, 2015, by either personal check, wire, cashier's check, money order or certified funds, your mortgage loan may be accelerated and proceed to FORECLOSURE, which may result in the SALE OF YOUR PROPERTY.  If you submit any lesser amount, Kondaur Capital Corporation may reject such payment and continue with foreclosure proceedings.
>
> As of December 23, 2014, you owe the following:

3

```
     ARREARAGES                                              Total Amount
     26 payments of $902.67 . . . @ 5.75[]% for [11/1/12-12/1/14]  23,469.42
     Late Charges                                                     35.30
                        TOTAL AMOUNT DUE                         $23,504.72
```
(*Id.*)

The letter also advised Leavells that payment was due 30 days from the letter's date and that she should include any future payment that comes due prior to her payment, and advised her to contact Kondaur to verify the exact amount due. (*Id.*) The letter also included a notice that the "communication [was] from a debt collector." (*Id.*) Leavells was again warned that non-payment "may result in the acceleration of the sums secured by [her] security instrument (at which point [her] total obligation will be immediately due and payable without further demand) and sale of property." (*Id.* at 200.) The letter closed by inviting Leavells to contact Kondaur to discuss alternatives to remedy her default. (*Id.*)

### E. Procedural History

Leavells initiated this action, a putative class action, on February 3, 2015. (Dkt. # 1.) On February 6, 2015, Leavells filed a Motion for Class Certification to prevent Defendant from mooting her claim by making a Rule 68 offer of judgment prior to a class certification motion. (Dkt. # 4.) On March 3, 2015 Kondaur filed a Motion to Stay that Motion (Dkt. # 8) which the court granted in relevant part on March 11, 2015 (Dkt. # 11). Subsequently the parties stipulated to the withdrawal of the motion. (Dkt. # 16.)

Kondaur moved to Dismiss on March 18, 2015 (Dkt. #12), which was mooted by Leavells Amended Complaint, filed on April 4, 2015 (Dkt. #15.) The Amended Complaint brings two claims for relief: (1) Violation of the FDCPA based on the three letters sent by Kondaur and (2) Violation of the Michigan Collection Practices Act

4

("RMCPA") based on the same three letters.[1] (*Id.* at 184–186.) On May 4, 2015, Kondaur moved to dismiss the Amended Complaint. (Dkt. # 20.)

## II. STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Tackett v. M&G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 466 (6th Cir. 2000)). Although a heightened fact pleading of specifics is not required, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

---

[1] The parties agree that the RMCPA mirrors the requirements of the FDCPA and need not be discussed separately.

*Twombly*, 550 U.S. at 555 (citing Fed. R. Civ. P. 8(a)). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) *abrogated on other grounds by Twombly*, 550 U.S. 544. In application, a "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citation omitted). Therefore, "to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citations and internal quotation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's well-pled factual allegations. *Twombly*, 550 U.S. at 556.

### III. DISCUSSION

#### A. FDCPA

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in collection with the collection of any debt." 15 U.S.C. § 1692e. The Sixth Circuit employs a "'least-sophisticated-consumer'" test for determining whether a debt collector's practice is deceptive. *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 443, 438 (6th Cir. 2008). "The least-sophisticated-consumer test is objective and is designed 'to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.'" *Id.* (quoting *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007). "[A]lthough

this standard protects naive consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Lamar*, 503 F.2d at 509–10 (citations and internal quotation marks omitted). To violate the FDCPA, the statement must be more than misleading, it "must be *materially* false or misleading." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

When a debt collector communicates with a consumer "in connection with collection of any debt," the FDCPA requires the debt collectors to provide written notice to the consumer containing:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

The FDCPA "does not apply to every communication between a debt collector and a debtor." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011). In order for the FDCPA to apply to a communication, "an animating purpose of the communication must be to induce payment by the debtor." *Id.* Balance statements that simply state a balance due, but do "not demand payment or threaten any

consequences" for nonpayment, that are "not part of any strategy to make payment more likely" are not sent with an animating purpose of inducing payment. *Id.* Courts in this district have found that communications "inform[ing] customers that a previous debt has been transferred to a current account" are not subject to the FDCPA. *Mabbit v. Midwestern Audit Serv., Inc.,* No. 07-11550, 2008 WL 723507, at *4 (E.D. Mich, Mar. 17, 2008).

### B. The September 18 Letter and the September 30 Letter Were Not Communications in Connection with the Collection of a Debt

Both the September 18 and September 30 Letters informed Leavells that her loan was sold. The September 18 Letter dealt with the actual sale of her loan and the September 30 Letter addressed the change in servicing. The September 18 Letter specifically advised that no action was required of Leavells. The "animating purpose" of this letters was not to induce payment by Leavells. In fact, this informational letter was specifically required by the Truth in Lending Act. *See* 15 U.S.C. § 1641(g). Contrary to Plaintiff's assertion, the September 18 Letter does not mention the change in servicing. Although the letter mentions that future monthly payments must be sent to Kondaur in accordance with the address on Leavells's mortgage statement, by its own terms it does not require any action in and of itself. The letter specifically contemplates separate mortgage statements which would constitute demands for payment. These statements, if sent, would become subject to the FDCPA after the transfer of the loan from Bank of America to Kondaur. The September 18 Letter simply provided information to Leavells; confirming the same information that Bank of America had sent to her eight days prior. It cannot be the basis for a FDCPA complaint.

Plaintiff assumes the September 30 Letter was a communication subject to the FDCPA. However, the a recent non-precedential opinion of the Sixth Circuit established that a letter (materially identical to the September 30 Letter) regarding the transfer of servicing did not, as a matter of law, have an animating purpose to induce payments on a defaulted mortgage. *Goodson v. Bank of America, N.A.*, 600 F. App'x 422, 430–31 (6th Cir. 2015). As in *Goodson*, the September 30 Letter did not make an express demand for payment, list a payment due date, or threaten consequences should Leavells fail to pay. The animating purpose was to inform Leavalls about a change in her loan servicer, not to induce her to resume payments on her defaulted mortgage. As noted by Kondaur, this notice was mandated by Real Estate Settlement Procedures Act. *See* 12 U.S.C. § 2605(c)(1). As such, it could not have been the basis of a § 1692g violation.[2]

## C. The December 23 Letter Fully Complied with the FDCPA

Plaintiff argues that the December 23 Letter's statement that $23,504.72 must be paid to avoid the potential acceleration of the loan could leave an unsophisticated consumer wondering what the $88,446.21 figure mentioned in the September 30 Letter means. However, the very mention of acceleration makes it obvious, even to an

---

[2]The parties both cite several out-of-circuit cases in support of their positions regarding the September 30 Letter's compliance with the FDCPA. Plaintiff goes so far as to refer to these cases as "precedent" (Dkt. # 22, Pg. ID 318), which of course they are not. Because the most persuasive authority available dictates that September 30 Letter was not a communication in connection with the collection of a debt, the court need not determine whether it complied with the FDCPA, a question the Sixth Circuit has not answered in this context. However, the court does note that Defendant overreads *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clerk, L.L.C.*, 214 F.3d 872 (7th Cir. 2000) (Posner, J.). *Miller* specifically found that the FDCPA required that the total amount due must be calculated "on the date the dunning letter was sent," rather than on a date certain weeks prior to the letter's date. *Id.* at 875–76.

9

unsophisticated consumer, that the larger figure was the entire amount owed (as of September 11, 2014) and the lower amount is the amount currently demanded to avoid acceleration.  The September 30 Letter clearly spoke of a "payoff" amount, unambiguously conveying that this figure referred to a total balance, rather than the accumulated sum of unpaid monthly payments.  Although Leavells did not supply them, the monthly mortgage statements would likely confirm this understanding to even the most unsophisticated consumer.

The December 23 Letter, on the other hand, breaks down the components of the $23,504.72 as 26 monthly payments of $902.67 from November 2012 through December 2014 plus $35.30 in late charges.  The cases cited by Leavells for support are distinguishable in that they involve communications that did not break down the calculation of the amount demanded.  The true character of Leavells's debt was clearly and fairly communicated by the December 23 Letter.  The letter also warns Leavells that, should the January 2015 payment come due before her payment, then that too must be paid to avoid a new default.  Nothing about this additional information is remotely misleading or confusing.  Indeed it is additional information that was meant to reflect the impending monthly payment's effect on the balance then owed.

Leavells also complains that Kondaur improperly acts in multiple capacities, claiming to be both the trustee for the owner of the debt, the owner of the debt, a creditor, and a debt collector.  Relying on *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355 (6th Cir. 2012), Leavells argues that Kondaur's identification as both a creditor and debt collector is improper.  Ipso facto, according to Leavells, Kondaur has violated the FDCPA.  Leavells misreads *Bridge,* which noted that "one cannot be both a 'creditor'

and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *Id.* at 359. It is true that 15 U.S.C. § 1692a contains different definition of creditor and debt collector. It is further true that Kondaur is a debt collector and not a creditor under the FDCPA. Kondaur concedes as much. However, it does not follow that because Kondaur had *previously* referred to itself as a creditor in the September 30 Letter, Kondaur committed a violation of the FDCPA. The ordinary meaning of creditor is "[o]ne to whom a debt is owed," more specifically "[a] person or entity with a definite claim against another." Black's Law Dictionary 424 (9th ed. 2009). Kondaur plainly meets this definition and its statement that it is the current creditor to differentiate itself from Bank of America, the previous creditor, is in no way misleading. Furthermore, the only letter subject to the FDCPA's requirements, the December 23 Letter, properly identified Kondaur as a debt collector for the purposes of the FDCPA. No FDCPA violation occurred.

## IV. CONCLUSION

Because Kondaur complied with the FDCPA in the only letter in which it was required to do so,

IT IS ORDERED that Defendant's Motion for Dismiss (Dkt. # 20) is GRANTED


      S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: June 30, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 30, 2015, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\15-10435.LEAVELLS.Dismiss.ml.wpd

12